IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA     :     Criminal No. 1:06-CR-00050
                             :
v.                           :     (Judge Rambo)
                             :
LAVARR WILLIAM ORR           :
A/K/A LAVAR WILLIAM ORR      :
A/K/A/ "VO"                  :

# M E M O R A N D U M

Before the court is Defendant Lavarr W. Orr's Motion to Suppress *Nunc Pro Tunc*. The issue has been briefed and a hearing was held on August 22, 2006. Thus, the matter is ripe for disposition. For the following reasons, the motion is denied.

## I.        Background

### A.    Procedural History

On February 8, 2006, Defendant Lavarr W. Orr ("Defendant") was charged with possession of a stolen firearm in violation of 18 U.S.C. § 922(j). On April 10, 2006, Defendant pleaded not guilty to the indictment. Tom Thornton, Esq., was appointed counsel through the Federal Public Defender's Office.

On July 31, 2006, Defendant filed the instant Motion to Suppress *Nunc Pro Tunc* and a brief in support thereof. The United States filed its opposition brief on August 10, 2006. The court held a hearing on the motion on August 22, 2006. Testimony was taken from Sergeant Nicholas Figge, Officer Nick Hansel, and Defendant.

### B. Factual Background

On February 23, 2004, at approximately 11:30 p.m., York City Police Sergeant Figge was seated in a marked police car at the intersection of South Street and Duke Street in the City of York. He saw a green Chevrolet Tahoe, with opaquely-tinted windows, drive north on Duke Street at a speed of 50 to 60 miles per hour. The legal speed limit in that area is 25 miles per hour, so Sergeant Figge activated his flashing lights, pulled out after the Tahoe, and radioed County Control to check the registration of the vehicle. The truck turned west onto Princess Street and pulled over, stopping in a legal parking spot. Sergeant Figge parked his vehicle, with lights still flashing, close behind the stopped truck.

After stopping the Tahoe, Defendant opened the driver's side door and put out his hands to show that he held nothing. Sergeant Figge instructed Defendant to stay inside the vehicle.

As to subsequent events, the testimony and evidence proffered by the United States differs from that proffered by Defendant. The facts as presented by each side are as follows.

### 1. Evidence from the United States

Sergeant Figge approached the truck. He saw that Defendant had not closed the driver's side door of the vehicle. The door remained open throughout the stop. Defendant sat in the driver's seat. Sergeant Figge stood with the open door to his left, facing Defendant as he got Defendant's identifying information. Upon recalling Defendant from previous arrests, Sergeant Figge called for back-up.

Approximately thirty seconds to a minute later, Officer Hansel pulled up. He parked his police cruiser close behind Sergeant Figge's vehicle and

approached Sergeant Figge and Defendant at the open driver's side door of the Tahoe. When Officer Hansel arrived, Sergeant Figge returned to his car to run a warrant check. The report showed that Defendant had four warrants outstanding, three for summary offenses and one for a probation violation.

Sergeant Figge returned to the open door of the Tahoe and informed Defendant that he was under arrest. He told Defendant to step out of the truck and put his hands on the vehicle. Defendant complied. Defendant asked to lock the Tahoe using his keys, but was not allowed to do so. He asked the officers to lock the truck themselves. Sergeant Figge promised he would. The sergeant testified that he planned on using the power lock switch inside the Tahoe to secure the vehicle after completing the arrest. He did not need the keys.

Officer Hansel then performed a pat-down search. He did not remove anything from Defendant's person or clothing. Officer Hansel handcuffed Defendant, then took him back to the officer's vehicle. On the walk to Officer Hansel's car, Defendant repeatedly asked him to lock the truck. It took approximately one minute for Officer Hansel to escort Defendant to his police car, secure him inside, and walk back to the open driver's side door of the Tahoe.

When Defendant exited the vehicle, Sergeant Figge looked into the passenger compartment and saw a bottle of beer, open, in the cup holder on the dashboard of the truck. As he reached in to remove the bottle, Sergeant Figge saw three bullets in the open area of the console between the front seats of the Tahoe. Seeing the bullets made the sergeant suspect that a gun was also present inside the car. He opened the closed section of the center console, and discovered a .357

Taurus pistol inside.[1] At this time, Officer Hansel returned and Sergeant Figge showed him the gun inside the console.

According to the police reports submitted by Sergeant Figge and Officer Hansel, both dated February 24, 2004, Sergeant Figge gave the gun to Officer Hansel, who walked with it back to his patrol car. Officer Hansel showed the gun to Defendant, holding it up to the closed, rear passenger window. Officer Hansel shook his head back and forth at Defendant. Defendant began to speak, but the officer could not hear him through the window. Officer Hansel lowered the window to listen. Defendant said, "I got shot. Of course I carry a gun now."

Upon arriving at the police station, Officer Hansel informed Defendant of his *Miranda* rights, which Defendant promptly and knowingly waived. Defendant made oral and written statements that he had bought the gun from a "dope fiend" who claimed to have stolen it during a burglary or robbery.

## 2. Evidence from Defendant

Defendant agrees that when he stopped the Tahoe on the night of February 23, 2004, he opened the driver's side door of the truck to show his empty hands. He testified, however, that when Sergeant Figge instructed him to stay inside the truck, the sergeant also instructed him to close the door. Defendant did so, then rolled down the window to speak to the sergeant. Defendant gave his identifying information and told Sergeant Figge that he did not have a driver's license. Sergeant Figge then returned to his patrol car, leaving Defendant in the Tahoe with the door closed and the window rolled down. Officer Hansel was not yet present on the scene.

---

[1] The owner of the Tahoe, Robert Borders, denied that the gun belonged to him.

After running the warrant search, Sergeant Figge returned to the Tahoe window. He told Defendant that he was under arrest and instructed him to get out of the vehicle. Defendant did so. As he exited, Defendant asked Sergeant Figge if he could lock the Tahoe. The sergeant gave permission. Defendant turned to the driver's side door and used the key to engage the power locks and secure the vehicle. He then put the keys in his pocket.

Sergeant Figge handcuffed Defendant. He performed a pat-down search, during which he removed the keys to the Tahoe from Defendant's pocket. At that time, Officer Hansel arrived. Sergeant Figge transferred custody of Defendant to Officer Hansel. Officer Hansel escorted Defendant to his own cruiser and immediately drove Defendant to the police station.

Defendant further alleges that, after he left the scene, Sergeant Figge searched the Tahoe, unlocking the truck with the keys he took from the Defendant's pocket during the pat-down. This, Defendant contends, is when Sergeant Figge found the gun.

Defendant did not recall whether there was an open container of beer in the front seat area. He denied that he had been drinking that night.

### 3. Findings of the Court

The court finds that the testimony proffered by Defendant is not credible because it is not consistent with standard police procedure, procedure established to circumscribe the "danger to the police officer [that] flows from *the fact of the arrest*, and its attendant proximity, stress, and uncertainty." *Thornton v. United States*, 541 U.S. 615, 621 (2004) (quoting *United States v. Robinson*, 414 U.S. 218, 234 n.5 (1973)). For the safety of the arresting officer, typically a suspect

is restrained by handcuffs, patted down, then immediately moved to a secure place away from the officer.  *See, e.g., Thornton*, 541 U.S. at 618; *New York v. Belton*, 453 U.S. 454, 456 (1981).  Such containment is not only constitutionally permissible, it is the most reasonable way to ensure that a police officer remains safe from violence by the arrestee as the officer continues with the process of securing the scene.  *See United States v. Hensley*, 469 U.S. 221, 235 (1985) (Police authorized to "take such steps as . . . reasonably necessary to protect their personal safety and to maintain the status quo during the course of the stop.").

The police officers here testified that they followed this standard procedure by arresting Defendant, restraining him in handcuffs, and securing him in Officer Hansel's cruiser.  The reports filed by the officers immediately after the incident corroborate their testimony.  Contrarily, Defendant claims that after he was placed under arrest, by Sergeant Figge alone, he was allowed the freedom of movement to access the driver's side door of the Tahoe.  This testimony is inconsistent with standard police procedure for officer safety.  Further, the particular concerns about arrestee access to the passenger compartment of a vehicle, discussed *infra*, render Defendant's account simply not believable.  The evidence offered by the government is credible, therefore, the court adopts the facts set forth by the United States.

## II.        **Legal Standard - Motion to Suppress**

The Fourth Amendment of the United States Constitution, as applied to the States by the Fourteenth Amendment, *Terry v. Ohio*, 392 U.S. 1, 8 (1968), requires that governmental agents obtain a valid warrant before executing a search

that invades a citizen's reasonable expectation of privacy, *Belton*, 453 U.S. at 457. A search performed without a warrant is *per se* unreasonable, unless the search falls within "a few specifically established and well-delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357 (1967). The established and well-delineated exceptions to the warrant requirement that are before the court are the exception for a search incident to a lawful arrest, *Chimel v. California*, 395 U.S. 752, 762-63 (1969), and the plain-view exception, *Coolidge v. New Hampshire*, 403 U.S. 443, 464-73 (1971) as it relates to the probable cause exception, *Pennsylvania v. Labron*, 518 U.S. 938, 940 (1996) (per curiam).

**III.     Discussion**

The issue before the court is whether the search of the passenger compartment of the Tahoe was lawful. Because the police officers did not have a warrant for the search, the court must determine whether the search was valid either 1) as incident to a lawful arrest or 2) as sufficiently grounded in probable cause created by Sergeant Figge's plain-view observation of contraband in the passenger compartment of the truck. Because the court finds that either basis for the search is constitutionally sound, the court will deny the Defendant's motion.

**A.     Search Incident to a Lawful Arrest**

**1. Legal Standard**

When a police officer makes a lawful custodial arrest, the officer is not required to obtain a warrant to search the person of the arrestee or the area immediately surrounding him. *Belton*, 453 U.S. at 457. The Supreme Court has held that the area "immediately surrounding" a recent occupant of a vehicle includes

the "relatively narrow compass" of the vehicle's passenger compartment. *Id.* at 460. Such a search is justified by the necessity of "'remov[ing] any weapons that [the arrestee] might seek to use in order to resist arrest or effect his escape' and [of] prevent[ing] the concealment or destruction of evidence." *Id.* at 457 (quoting *Chimel*, 395 U.S. at 763). As the officer searches the passenger compartment of a vehicle, the officer may open and search "containers" within the passenger compartment, whether they are open or closed, regardless of the size of the container. *Belton*, 453 U.S. at 460. The "console" of an automobile is, by Supreme Court definition, a "container" that is permissible to search. *Id.* at 461 n.4.

Searching the passenger compartment of a vehicle is proper under *Belton* when it "'follow[s] immediately' after the arrest" of an occupant of the vehicle. *United States v. Myers*, 308 F.3d 251, 269 (3d Cir. 2002) (quoting *Belton*, 453 U.S. at 462). In *Virgin Islands v. Rasool*, a search satisfied the immediacy requirement when the police arrested the driver of a car, handcuffed him, then promptly searched the backseat area of the passenger compartment of the vehicle. 657 F.2d 582, 588 (3d Cir. 1981); *c.f. United States v. Willis*, 37 F.3d 313, 318 (7th Cir. 1994) (observing that intervening acts that occur within a reasonable amount of time are permissible between arrest and search).

### 2. Analysis

Sergeant Figge's search of the passenger compartment of the Tahoe, including the closed console containing the gun, was proper as incident to the lawful arrest of Defendant.[2] Defendant was arrested while sitting in the driver's seat of the truck. He was handcuffed and patted down while standing next to the open driver's

---

[2] Defendant does not challenge the lawfulness of his arrest.

side door. Under *Belton*, therefore, the passenger compartment of the Tahoe was the area "immediately surrounding" him. Also according to *Belton,* the console between the front seats of the truck, though closed, was a container inside the passenger compartment permissible to search.

Further, the instant search "followed immediately" after the arrest. Defendant was placed under arrest and asked to get out of the vehicle. He was handcuffed and patted down by Officer Hansel. Officer Hansel testified that it took him about one minute to escort Defendant approximately thirty feet back to his police car and return to the open driver's side door of the Tahoe. In the very short amount of time required to arrest and secure Defendant, Sergeant Figge completed the search which yielded the gun. Because the search was limited to the passenger compartment of the Tahoe and immediately followed the arrest, the search was proper as incident to the lawful arrest of Defendant. Therefore, Defendant's motion to suppress will be denied on this ground.

      **B.**    **Plain View Leading to Probable Cause**

      **1. Legal Standard**

Under the plain-view doctrine, a police officer need not obtain a warrant for evidence or contraband seized after it has been discovered in plain view. *Coolidge*, 403 U.S. at 465. If an item is in plain view, mere observation of it by a police officer does not involve an invasion of privacy prohibited by the Fourth Amendment. *Horton v. California*, 496 U.S. 128, 133 (1990). Seizing the item, however, invades the owner's possessory interest in the object and requires Constitutional justification. *Id.* at 134. Accordingly, seizure of an object in plain view is permissible only if the police officer is lawfully present in the place from

which the officer sees the object, the incriminating nature of the evidence is readily apparent, and the officer has a "lawful right of access" to the evidence.[3] *Minnesota v. Dickerson*, 508 U.S. 366, 375 (1993).

Taking each requirement in turn, an officer is "lawfully present" when the officer acts within the parameters of the Fourth Amendment to arrive at the place from which he saw the object at issue. *Horton*, 496 U.S. at 135. An officer's presence is lawful when he is on premises pursuant to a valid warrant, executing a lawful arrest, or performing a search incident to a lawful arrest. *Id.* at 136; *see United States v. Dubose*, No. 05-0372, 2006 WL 1876999, at *12 (D.D.C. July 5, 2006). If the officer violates the Fourth Amendment to arrive at the place from which he sees the object in plain view, seizing the object is unconstitutional. *Horton*, 496 U.S. at 136.

Next, the nature of the object must be incriminating in itself, such as illegal contraband or stolen goods. *Coolidge*, 403 U.S. at 471; *see United States v. Desir*, 257 F.3d 1233, 1236 (11th Cir. 2001) (crack cocaine); *United States v. Prazak*, 500 F.2d 1216, 1217 (9th Cir. 1974) (illegal guns). An everyday item that is not clearly contraband or stolen, though within sight of searching police, is not properly subject to seizure under the plain-view doctrine. *Coolidge*, 403 U.S. at 471.

In the particular context of a lawful traffic stop, a police officer has a "lawful right of access" to seize an incriminating object in the officer's plain view during the stop. *Hensley*, 469 U.S. at 235; *see Texas v. Brown*, 460 U.S. 730, 739

---

[3] The "inadvertent discovery" of evidence is "characteristic of most legitimate 'plain view' seizures, [but] it is not a necessary condition" for evidence to be admissible under the plain-view exception. *Horton*, 496 U.S. at 130.

(1983). For example, an officer acts within the bounds of the Fourth Amendment to seize crack cocaine during a traffic stop when he sees it after shining his flashlight through the windshield of the stopped car. *Desir*, 257 F.3d at 1236.

If the police have probable cause to believe that there is contraband in a vehicle, the Fourth Amendment allows the police to search it if the police further believe that the vehicle is readily mobile. *See Pennsylvania v. Labron*, 518 U.S. 938, 940 (1996) (per curiam) (citing *California v. Carney*, 471 U.S. 386, 390-91 (1985)); *Chambers v. Maroney*, 399 U.S. 42, 50 (1970). Probable cause is a fluid concept, dependant on the facts of each case. *United States v. Gaskin*, 364 F.3d 438, 456 (2d Cir. 2004). It exists "where 'the facts and circumstances within . . . [the officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a [person] of reasonable caution in the belief that' evidence of a crime will be found in the place to be searched." *Id.* (quoting *Brinegar v. United States*, 338 U.S. 160, 175 (1949)). Case law establishes that an automobile, by its nature, is readily mobile. *Labron*, 518 U.S. at 941.

### 2. **Analysis**

The search of the passenger compartment of the Tahoe satisfied the Fourth Amendment because the items in plain view inside the passenger compartment gave Sergeant Figge probable cause to believe that the vehicle contained contraband. There was no argument regarding the ready mobility of the Tahoe.

The open beer inside the truck was properly seen and seized under the plain-view doctrine. Sergeant Figge was lawfully present at the open driver's side door of the Tahoe because he was in the process of executing a lawful arrest with

Officer Hansel.  From his lawful vantage point there, he saw the beer.  The open beer bottle was incriminating in itself because driving with alcohol in an open container directly violates 75 Pa. Stat. Ann. § 3809 (2004) ("[A]n individual who is an operator or an occupant in a motor vehicle may not be in possession of an open alcoholic beverage container . . . while the motor vehicle is located on a highway [in Pennsylvania].").  Finally, Sergeant Figge had lawful right of access to take the beer bottle because it was an incriminating object that he saw in the context of his lawful traffic stop of Defendant for speeding.  Thus, seizure of the bottle of beer was permissible under the Fourth Amendment.

As Sergeant Figge reached into the truck to remove the beer, he saw three bullets resting in the open area of the console of the Tahoe.  Simply seeing the bullets did not implicate the privacy rights of Defendant, under *Horton*, because they were visible in plain view.

After seeing the bullets stored in the open area of the console of the vehicle, the facts at hand established sufficient probable cause to believe that the Tahoe contained contraband.  The bullets made Sergeant Figge suspect the presence of a gun.  He knew that Defendant was on probation from the warrant report, and reasonably concluded that it would violate Defendant's parole to carry a weapon.  Further, Defendant made repeated requests that the police lock the truck's doors, which made Sergeant Figge and Officer Hansel suspicious that he did not want the police to find something inside.  Thus, probable cause to suspect that the Tahoe contained contraband was established.  Accordingly, from the plain view seizure of the beer bottle to the search of the closed console and seizure of the gun, the

investigation of the passenger compartment of the Tahoe was permissible under the Fourth Amendment. Defendant's motion to suppress is denied on this ground.

## IV.        Conclusion

For the foregoing reasons, the court will deny Defendant's Motion to Suppress *Nunc Pro Tunc*. An appropriate order will issue.

> s/Sylvia H. Rambo
> SYLVIA H. RAMBO
> United States District Judge

Dated: August 29, 2006.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | Criminal No. 1:06-CR-00050 |
| v. | (Judge Rambo) |
| LAVARR WILLIAM ORR<br>A/K/A LAVAR WILLIAM ORR<br>A/K/A/ "VO" | |

## **ORDER**

In accordance with the accompanying memorandum of law, **IT IS HEREBY ORDERED THAT** Defendant's Motion to Suppress *Nunc Pro Tunc* is **DENIED**.

                                          s/Sylvia H. Rambo
                                          SYLVIA H. RAMBO
                                          United States District Judge

Dated:  August 29, 2006.